UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ERNEST MAJOR,

                    Petitioner,

vs.                                   Case No.  2:08-cv-837-FtM-29SPC

SECRETARY, FLORIDA DEPARTMENT  OF
CORRECTIONS AND FLORIDA ATTORNEY
GENERAL,

                    Respondents.

_____

## OPINION AND ORDER

### I. Status

Ernest Major (hereinafter "Petitioner" or "Major") initiated this action by filing a *pro se* Petition for Writ of Habeas Corpus ("Petition," Doc. #1) pursuant to 28 U.S.C. § 2254.  The Petition challenges Petitioner's judgment of conviction for Home Invasion Robbery/Armed in violation of Florida Statute 812.135, which was entered in the Twentieth Judicial Circuit Court, Lee County, Florida.  Petition at 1.[1]  More specifically, the record reflects that a jury convicted Petitioner of home invasion robbery with a firearm after an incident in which Petitioner entered the motel room of the victim, Sister Carol Andrew, and robbed her at

_____

[1]The page numbers referenced within this Order, other than to the page number referenced in the Exhibits, are to the page of the identified document as it appears on the Court's case management electronic computer filing system.  Exhibits are available in paper format only.

gunpoint.   Petitioner was sentenced to life imprisonment as a prison releasee reoffender.   Petitioner's sentence and conviction were affirmed, *per curiam*, on direct appeal on March 23, 2005.

The Petition *sub judice* raises five grounds for relief:

**Ground 1:** Major was denied effective assistance of counsel in violation of the 6th and 14th Amendments to the United States Constitution when, after the trial court granted [a] mistrial defense counsel failed to inform defendant that a mistrial included obtaining a new jury.

**Ground 2:** Major was denied effective assistance of counsel when proceeding with the wrong theory of defense and failed to file a motion to suppress a "photo-pak" line-up violating Major's rights under the 6th and 14th Amendments to the United States Constitution.

**Ground 3:** Ineffective assistance of counsel for failing to bring to the trial court's attention that the alleged victim was not wearing the nun's habit during the time of the alleged crime, violating the 6th Amendment rights under the United States Constitution where the victim's clothing in court wrongfully prejudiced Major from receiving a fair trial.

**Ground 4:** Whether the state trial court properly admitted in evidence a letter, photograph, and related testimony that was attempted to be excluded.

**Ground 5:** Insufficient evidence to convict violating due process of the 14th Amendment under the United States Constitution.

Petition at 6-15.   Petitioner submits a Memorandum of Law in Support of the Petition (Doc. #2, Memorandum).   After filing a limited response and conceding that the Petition was timely filed pursuant to 28 U.S.C. § 2244(d)(Doc. #13),[2] Respondent filed a

---

[2]Respondent, the Secretary of the Florida Department of
(continued...)

Supplemental Response to the Petition (Doc. #25, Response). Respondent submits that the Petition should be denied due to Petitioner's procedural defaults and his failure to satisfy his burden under 28 U.S.C. § 2254(d), (e). Response at 1. Respondent filed exhibits (Exhs. 1-30) in support of the Response (Doc. #27 18), including the transcript of the March 27, 2007 evidentiary hearing, (Exh. 17, "E.H."), and eight volume record on direct appeal (Exh. 1, Vol. I-VIII). Petitioner filed a reply to the Response (Doc. #28, Reply), incorporating a renewed request for an evidentiary hearing. This matter is ripe for review.

---

[2](...continued)
Corrections, in his Limited Response (Doc. #13), seeks dismissal of the Florida Attorney General as a named respondent. Limited Response at 1-2. Rule 2(a) of the Rules Governing Section 2254 Cases in the United District Courts (hereinafter the "Rules") provides that applicants in "present custody" seeking habeas relief should name "the state officer having custody of the applicant as respondent." The Supreme Court has made clear that there "is generally only one  proper respondent to a given prisoner's habeas petition." Rumsfeld v. Padilla, 124 S. Ct. 2711, 2717 (2004). This is "'the person' with the ability to produce the prisoner's body before the habeas court." Id. When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the attorney general or some other remote supervisory official." Id. at 2718 (citations to other authorities omitted). Alternatively, the chief officer in charge of the state penal institution is also  recognized as the proper named respondent. Rule 2(a); Sanders v. Bennett, 148 F.2d 19 (D.C. Cir. 1945). In Florida, that person is the current Secretary of the Department of Corrections. Consequently, the Court will dismiss the Florida Attorney General as a named respondent.

## II.  Applicable § 2254 Law

### A.  Exhaustion and Procedural Default

A federal court may only review an issue under § 2254 if petitioner first afforded the state courts an adequate opportunity to address that issue.  28 U.S.C. § 2254(b)(1)(A).

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.  To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

Baldwin v. Reese, 541 U.S. 27, 29 (2004)(internal citations and quotations omitted).  This imposes a "total exhaustion" requirement in which all the federal issues must have first been presented to the state courts.  Rhines v. Weber, 544 U.S. 269, 274 (2005).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).  See also Henderson v. Campbell, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)); Duncan v. Henry, 513 U.S. 364, 365 (1995)(stating "exhaustion of state remedies requires that petitioners 'fairly

present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights'") . Additionally, in articulating a factual basis in support of a claim for relief, a petitioner must have also alleged the factual predicate to the state court. Kelley v. Sec'y for Dep't of Corrs., 377 F.3d 1317, 1343–44 (11th Cir. 2004)(noting that petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petition if they did not first raise them in the state courts).

"A claim is procedurally defaulted if it has not been exhausted in state court and would now be barred under state procedural rules." Mize v. Hall, 532 F.3d 1184, 1190 (11th Cir. 2008). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, . . . . ." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001). A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances. First, a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error. House v. Bell, 547 U.S. 518, 536-37 (2006); Mize v. Hall, 532 F.3d at 1190. Second, under exceptional circumstances, a petitioner may obtain federal habeas review of a procedurally defaulted claim, even without a

showing of cause and prejudice, if such review is necessary to correct a fundamental miscarriage of justice. House v. Bell, 547 U.S. 518, 536 (2006); Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

## B. Deferential Review Required By AEDPA

Major filed his timely Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action. Abdul-Kabir v. Quarterman, 127 S. Ct. 1654, 1664 (2007); Penry v. Johnson, 532 U.S. 782, 792 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007). Consequently, under the deferential review standard, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011). "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that the state-court decisions be given the benefit of the doubt." Id. (internal quotations and citations omitted). See also

<u>Harrington v. Richter</u>, 131 S. Ct. at 786 (pointing out that "if [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be.").

Both the Eleventh Circuit and the Supreme Court broadly interpret what is meant by an "adjudication on the merits." <u>Childers v. Floyd</u>, 642 F.3d 953, 967-68 (11th Cir. 2011). Thus, a state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits that warrants deference by a federal court. <u>Id.</u>; <u>See</u> <u>also</u>, <u>Ferguson v. Culliver</u>, 527 F.3d 1144, 1146 (11th Cir. 2008). Indeed, "unless the state court clearly states that its decision was based solely on a state procedural rule [the Court] will presume that the state court has rendered an adjudication on the merits when the petitioner's claim 'is the same claim rejected' by the court." <u>Childers v. Floyd</u>, 642 F.3d at 969 (quoting <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002)).

"A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme] Court." <u>Thaler v. Haynes</u>, ___ U.S. ___, 130 S. Ct. 1171, 1173 (2010); <u>see</u> <u>also</u> <u>Carey v. Musladin</u>, 549 U.S. 70, 74 (2006)(citing <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000))(recognizing "[c]learly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision).

"[T]o be 'contrary to' clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." Ward, 591 F.3d at 1155 (internal quotations and citation omitted); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).  A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown, 544 U.S. at 134; Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), cert. denied, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 120 S. Ct. at 1520).

The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell, 540 U.S. at 17-18; Ward, 592 F.3d at 1155.  Further, the Supreme Court has recently held that review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S. Ct. at

1398.  Thus, the Court is limited to reviewing only the record that was before the state court at the time it rendered its order.  Id.

### C.  Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d).  Newland v. Hall, 527 F.3d 1162, 1183 (11th Cir. 2008).  Post-AEDPA, the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case.  Newland, 527 F.3d at 1184.  In Strickland, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Strickland, 466 U.S. at 688; see also Bobby Van Hook, 558 U.S. ___, 130 S. Ct. 13, 16 (2009); Cullen v. Pinholster, 131 S.Ct. at 1403 (2011).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." Bobby Van Hook, 130 S. Ct. at 17 (internal quotations and citations omitted).  It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006), cert. denied sub nom. Jones v. Allen, 127 S. Ct. 619 (2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny.  Id.  A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  An attorney is not ineffective for failing to raise or preserve of a meritless issue. Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir.), cert. denied sub nom. Ladd v. Burton, 493 U.S. 842 (1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is

constitutionally compelled.'" <u>Chandler v. United States</u>, 218 F.3d
1305, 1313 (11th Cir. 2000)(quoting <u>Burger v. Kemp</u>, 483 U.S. 776,
794 (1987)).

### III.   Findings of Fact and Conclusions of Law

This Court has carefully reviewed the record and, for the
reasons set forth below, concludes no evidentiary proceedings are
required in this Court. <u>Schriro v. Landrigan</u>, 550 U.S. 465, 127 S.
Ct. 1933, 1939-40 (2007). Petitioner does not proffer any evidence
that would require an evidentiary hearing, <u>Chandler v. McDonough</u>,
471 F.3d 1360 (11th Cir. 2006), and the Court finds that the
pertinent facts of the case are fully developed in the record
before the Court. <u>Schriro</u>, 127 S. Ct. at 1940; <u>Turner v. Crosby</u>,
339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert. denied</u>, 541 U.S. 1034
(2004). Consequently, the Court will deny Petitioner's request for
an evidentiary hearing.

**Ground One**

In his first ground alleging ineffective assistance of trial
counsel, Petitioner assigns fault to trial counsel for failing to
advise him that if he agreed to the mistrial granted by the trial
court, he was entitled to a new jury. Petition at 6.
Consequently, Petitioner claims that he agreed to take his
attorney's advice that the case was headed for an acquittal and
declined the mistrial. Petitioner states that if he had been told
that he was entitled to a new jury, he would have accepted the
mistrial. He claims he was prejudiced by counsel's action because

the objectionable testimony, *i.e.* that Petitioner had been in jail, remained with the jury.

Petitioner raised this issue as ground two in his *pro se* Rule 3.850 motion. Exh. 9 at 5(d). The post conviction court granted Petitioner an evidentiary hearing in connection with this claim. Exh. 13 at 4. Thereafter, the post conviction denied this claim citing to and setting forth the correct <u>Strickland</u> standard. In pertinent part, the post conviction court found:

> 4. Defendant's trial counsel testified at the evidentiary hearing that he motioned for a mistrial after a witness for the prosecution stated during her testimony that Defendant was in jail. The trial court granted the motion. Counsel then asked whether he could discuss the matter with Defendant and the trial court agreed. Although counsel could not recall the specifics of his conversation with Defendant, he did remember recommending that they decline the mistrial because he strongly believed the defense "was headed towards an acquittal." Counsel remembered that he believed that the state's case was very weak because there was no physical evidence, no confession from Defendant and only one eye-witness (the victim).
>
> 5. According to Defendant's evidentiary hearing testimony, after the trial court granted the mistrial, he had the opportunity to speak privately with his attorney in a holding area off of the courtroom. Counsel informed him that if he accepted the mistrial the defense would get to start over, but he recommended that Defendant continue with the trial. After considering the issue, Defendant chose to decline the mistrial because he believed that inconsistencies in the victim's testimony would be brought out on cross-examination.
>
> 6. The Court finds that Defendant was not affirmatively misadvised about the law, but rather was consulted about whether to accept the mistrial. Defendant considered his options and his attorney's legal advise and then made a conscience decision to continue with the trial. Based on the evidence presented at the evidentiary hearing, the Court finds that counsel's performance was not deficient

> within the meaning of <u>Strickland</u> and **ground two** is denied
> on the merits.

Ex. 19 2-3 (emphasis in original).  Petitioner appealed the post

conviction court's denial of his Rule 3.850 motion on this issue.

Exh. 20.   The appellate court *per curiam* affirmed the post

conviction court's order.  <u>Major v. State</u>, 976 So. 2d 1109 (2007);

Exh. 24.

    As noted, the post conviction court correctly cited to the

correct federal precedent of <u>Strickland</u> and evaluated Petitioner's

claim under <u>Strickland's</u> deficiency standard.  "Recognizing the

temptation for a defendant to second-guess counsel's assistance

after conviction or adverse sentence, the Court established that

counsel should be strongly presumed to have rendered adequate

assistance and made all significant decisions in the exercise of

reasonable judgment."  <u>Cullen v. Pinholster</u>, 131 S.Ct. at 1403

(internal quotations and citations omitted).  The record of the

evidentiary hearing supports the post conviction court's finding

that counsel was not deficient.

    During trial, the prosecutor asked witness Zelda Williams

whether Petitioner was arrested.  TT, Vol. IV at 262.  Before the

witness responded to the question, Petitioner's trial counsel

objected to the question and moved for a mistrial at sidebar.  <u>Id.</u>

at 263.  After instructing the jury to leave and taking a short

recess, the trial court stated that it "will grant the motion for a mistrial very reluctantly." Id. at 266-67.  Trial counsel asked for permission to confer with Petitioner about the issue.  Id. at 267.  After meeting with Petitioner, trial counsel, in withdrawing the motion for a mistrial, explained:

> Having had a chance to explain the situation to [Petitioner], he would like to go ahead with the trial, and the best explanation I can give you is I reacted to the question and made the objection and the motion and I didn't think to explain it to him.  During the time that you were out, it just - - I just didn't do it.

Id. at 267-68.

During the evidentiary hearing, trial counsel, a seasoned trial lawyer, testified as follows:

> Q:   And what happened after he granted that motion for mistrial?
>
> A:   Well, after he . . . granted it, I asked him for – what happened is it came up suddenly.  I reacted to it when it came up, and made the motion.  He was inclined to grant it, said he was going to grant it.  And I asked him for an opportunity to discuss it with [Petitioner], so that we could be sure that he understood it, because it had occurred so quickly, and he gave me that opportunity.  That's my memory of the situation.
>
> Q:   So would it be fair to say that the judge actually was going to dismiss the jury at that point?
>
> A:   That's what - - that's correct.   That's my understanding.
>
> Q:   And you discussed the mistrial motion and order with Mr. Major?
>
> A:   Yes.

E.H. at 8-9.   Although counsel testified that he normally would go
into the details of a mistrial, due to the passage of time, counsel
could not recall whether he had expressly stated to Major that
"starting over" would include a new jury.  <u>Id.</u> at 20.   Indeed,
counsel could not recall the specifics of the conversation with
Petitioner.

> Q:   And do you remember the conversation that you had
> with Mr. Major after the judge had initially granted the
> mistrial and you had asked for time to speak with him?
>
> A:   I do not remember the conversation.
>
> Q:   Did you tell him that he would -- specifically tell
> him that he would get a new jury?
>
> A:   I can't recall that.  I know that I discussed it
> with him, but I can't give you the specifics of the
> conversation.  I do remember that I recommended to him
> that we continue on with this case and waive or give up
> the right to this mistrial.
>
> Q:   Okay.  Did you explain to him full -- and this is to
> the best of your recollection, did you explain to him
> fully the import of the granting of a mistrial?
>
> A:   I can't remember the substance of the conversation.
> I mean, I know we discussed it and I would have done my
> best to do that, but I can't give you the specifics of
> what I told him.
>
> Q:   Now, you recommended that he not accept the
> mistrial; is that correct?
>
> A:   That's correct.
>
> Q:   And it's because you felt that you had done a good
> job of cross-examining their prime eyewitness?
>
> A:   I wouldn't go that far.  I felt that, under the
> facts of this case, that we were headed for an acquittal.
>
> Q:   Okay.

A:   I was -- this is an unusual case, and out of the
norm for me, the exception from the general rule, where
the evidence is strong and you're probably headed for a
conviction.  I really was confident, in this case, that
we were going to get an acquittal because of the weakness
of the State's case.

Id. at 11-12.   Trial counsel did, however, confirm that if

Petitioner had advised him that he wanted the mistrial, counsel

"would have accepted it.  I was going to let [Petitioner] make the

final decision."  Id. at 23.

Petitioner does not dispute that he discussed the option of a

mistrial with his counsel, and concedes that counsel advised him

that "we can start over."  Id. at 35.  Petitioner thought that

"starting over" meant that he would still have the same jury.  Id.

at 36.  Petitioner testified that he did not understand what a

mistrial was, but acknowledged that he did not ask his attorney for

any explanation concerning a mistrial either.  Id. at 39.

The Court finds that the State courts' factual determinations

were not unreasonable determinations based on the evidence

presented.  Additionally, the State courts' decisions were not

contrary to or an unreasonable application of clearly established

federal law.  As noted above, counsel's actions are deemed

reasonable. Here, the presumption that trial counsel's performance

was reasonable under the circumstances is even stronger because the

record reflects that counsel was an experienced criminal defense

attorney.[3]   "It is Petitioner's burden to introduce evidence proving trial counsel's deficiency." Harvey v. Warden, Union Corr., 629 F.3d 1228, 1244 (11th Cir. 2011). Where a record is silent or incomplete, the Court assumes that counsel acted reasonably. Id. (citing Williams v. Head, 185 F.3d 1223, 1228 (11th Cir. 1999)(stating "where a record is incomplete or unclear about [trial counsel's] actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment."). Similarly, "when the evidence is unclear or counsel cannot recall specifics about his actions due to the passage of time and faded memory, we presume counsel performed reasonably and exercised reasonable professional judgment." Blakenship v. Hall, 542 F.3d 1253, 1274 (2008)(citations omitted).

The United States Supreme Court has recognized that a defendant has the ultimate authority to make certain fundamental decisions in his case: (1) whether to plead guilty; (2) waive a jury; (3) testify in his own behalf; and (4) take an appeal. U.S. v. Burke, 257 F.3d 1321, 1323 (11th Cir. 2001)(citing Jones v.

---

[3] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc), cert. denied, 531 U.S. 1204 (2001). At the evidentiary hearing, Mr. Garber testified that he had been employed by the Public Defender's Office for 28 years. E.H. at 4. See Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney), cert. denied, 530 U.S. 1246 (2000).

Barnes, 463 U.S. 745 (1983)), cert denied, 123 S.Ct. 940 (2002).
Consequently, the Eleventh Circuit has recognized:

> Although a represented defendant does retain the absolute
> right to make limited choices for his case, neither the
> Supreme Court, nor this Court, has ever expanded the
> narrow class to include the choice of whether to accept
> a mistrial or to request an Allen charge.  In the absence
> of case law on point, we decline to add to the list of a
> client's fundamental decisions.   Put differently, we
> decline to expand the circumstances that erode defense
> counsel's authority at trial.   Defense counsel in a
> criminal trial is more than an adviser to a client with
> the client's having the final say at each point.  He is
> an officer of the court and a professional advocate
> pursuing a result-almost always, acquittal-within the
> confines of the law; his chief reason for being present
> is to exercise his professional judgment to decide
> tactics.

Id.   Thus, Petitioner can not demonstrate that counsel was
deficient in failing to advise him of the parameters of a mistrial
because the decision to accept or reject the same did not belong to
Petitioner, but was a tactical decision to be made by counsel.
Nevertheless, at the time, Petitioner concurred with counsel's
perception of the trial and agreed to decline the mistrial.  Based
upon the foregoing, the Court denies Ground One as without merit.

**Ground Two**

In his second ground alleging ineffective assistance of trial
counsel, Petitioner faults counsel for presenting "the wrong theory
of the defense."   Petition at 8.   In support, Petitioner states
that trial counsel argued to the jury that the victim's
identification of Petitioner was not credible.  Instead, Petitioner

submits that counsel should have filed a motion to suppress the victim's out-of-court identification. Petitioner identifies three different bases upon which counsel should have filed a suppression motion. First, Petitioner claims that the there was not probable cause to include Petitioner's photo in the photo array sent to the victim, who was out of state, to view. Memorandum at 12. Second, Petitioner alleges that the identification procedure was suggestive. Id. at 15. Third, Petitioner alleges that the victim, who wore glasses, did not have her glasses on when the assailant came into her room and was not able to provide the police with any facial description her alleged assailant. Id. at 13

Petitioner raised this claim as ground one in his *pro se* Rule 3.850 motion. Exh. 9 at 5(a). After response by the State, Exh. 11, the post conviction court summarily denied this claim. Exh. 11. The post conviction court, in relevant part, held:

> 3. In ground one, Defendant alleges that counsel was ineffective for failing to file a motion to suppress the photo line-up. Defendant raises three arguments, which the Court will treat as sub-claims, to support the filing of a motion to suppress. In **sub-claim (a),** Defendant alleges that counsel was ineffective for failing to file a motion to suppress the photo line-up because law enforcement officials did not have probable cause to develop him as a suspect. He argues that law enforcement officials obtained his photo "from an unconnected and unrelated robbery" and included it in the photo line-up based "on a hunch, speculation and guesswork." Notably, however, Defendant admits in his Memorandum that law enforcement authorities "found some similarities in the modus operandi" of the unconnected robbery and the instant case. Contrary to Defendant's assertion, law enforcement officials do not need probable cause to

suspect that a person has committed a crime prior to including their photo in a line-up. Therefore, assuming *arguendo* that the alleged facts are true, the Court finds that they would not have provided a legal basis for the filing of a motion to suppress. Accordingly, because counsel cannot be deemed ineffective for failing to file a baseless motion, sub-claim (a) of ground one is denied on the merits.

4. Defendant alleges in **sub-claim (b)** that counsel was ineffective for failing to file a motion to suppress the photo line-up on the basis that the line-up procedures employed by law enforcement officials were suggestive and coercive. Defendant claims the victim "could not have genuinely and truthfully known [Defendant] was her robber without [law enforcement officials] informing her." The victim never gave law enforcement officials a "facial description of her intruder" and, therefore, she could not have selected him from the photo line-up without law enforcement "influence and assistance." Defendant further asserts that the photo line-up "was not genuinely displayed." The Court notes that Defendant does not allege any specific facts in support of his assertion that the photo line-up procedures employed by law enforcement officials were improper. Rather, it appears Defendant's assertions are based wholly on speculation. Because postconviction relief cannot be based on speculative assertions, **sub-claim (b)** of ground one is denied. See Jones v. State, 845 So. 2d 55 (Fla. 2003).

5. Pursuant to **sub-claim (c)**, counsel was ineffective for failing to file a motion to suppress the photo line-up on the basis that the victim's identification of Defendant "was unreliable and untrustworthy" because she had never provided a previous description of her assailant. Defendant further alleges "counsel pursued 'misidentification' as the defense, when the facts and circumstances surrounding the State's case in chief were no identification." The record reflects that the victim described the assailant to a 911 operator as "probably black," tall, slender, good looking, wearing a t-shirt and long pants. See attached copy of trial transcript, pages 320-321. A few hours later, the victim described the perpetrator to investigators as a light skinned black or [H]ispanic male, approximately 6 feet tall with a slender build and short black hair, wearing dark clothes, probably a t-shirt and slacks. See attached copy of trial transcript, pages 144-149, 158-162. Accordingly,

the Court finds that the record conclusively refutes
Defendant's allegation that the victim never provided a
description of the perpetrator prior to viewing the photo
line-up. Therefore, because counsel cannot be deemed
ineffective for failing to file a baseless motion, **sub-
claim (c)** of ground one is denied on the merits.
Furthermore, because none of the sub-claims raised in
support of ground one have merit, the Court finds that
ground one is denied in its entirety.

Ex. 13 (emphasis in original). Petitioner appealed the denial of

this claim by the post conviction court. Exh. 20 at 20. The

appellate court *per curiam* affirmed the post conviction court's

order. Major v. State, 976 So. 2d 1109 (2007); Exh. 24.

Probable cause is defined as "facts and circumstances

sufficient to warrant a prudent man in believing that the suspect

had committed or was committing an offense." Grider v. City of

Auburn, 618 F.3d 1240, 1257 (11th Cir. 2010)(quoting Gerstein v.

Pugh, 420 U.S. 103, 111 (1975))(internal quotation marks omitted).

Arguable probable cause exists when "reasonable officers in the

same circumstances and possessing the same knowledge as the

Defendants could have believed that probable cause existed to

arrest Plaintiff." Id. (internal citations and quotations

omitted). Whether arguable probable cause exists "depends on the

elements of the alleged crime and the operative fact pattern." Id.

In determining whether a photographic identification procedure

violates a defendant's rights to due process, the courts employ a

two-part test and consider whether the procedure is "so

impermissibly suggestive as to give rise to a very substantial

likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968). First, the court determines whether the procedure itself is unduly suggestive - - whether the procedure indicates which individual the witness should select. Neil v. Biggers, 409 U.S. 188, 198 (1972). Second, the court looks at the totality of the circumstances to determine whether the identification was still reliable. Id. at 199. There are five factors that weigh in the reliability calculation are: (1) opportunity of the witness to view the suspect at the time of the crime, (2) the witness' degree of attention, (3) accuracy of the witness' prior description of the suspect, (4) level of certainty demonstrated by the witness at confrontation, and (5) length of time between crime and confrontation. Id. at 199-200.

Based upon the record and controlling federal precedent, the Court finds that the State court's summary rejection of this claim warrants deference. The State court's adjudication of this claim was not contrary to clearly established federal law. Further, Petitioner does not identify a viable factual and legal basis to support defense counsel filing a motion to suppress the photo array.

Here the victim described the assailant to police immediately after the robbery as being "black, approximately six foot, slender build." TT, Vol. III at 149; See also, excerpt of radio transmission between dispatcher and victim attached as exhibit to

Petitioner's brief on direct appeal (Exh. 2)(wherein the victim describes the assailant as "probably black," "tall and slender," and "quite good looking." Although the victim could not state with certainty at what point during the robbery she put her glasses on, she believed she must have had them on because "when [she] was looking at him [she] could see him." TT, Vol. IV at 212. She further testified at trial that, after she was shown a photo array of six young men, she identified the picture of Petitioner contained in the photo array and "circled the one in the upper left corner and initialed it as the one [she] thought had robbed [her.]" Id. at 226. The victim testified that the detective who showed her the photo arrays did not indicate or say anything to her about the person she identified until _after_ she had selected the picture. Id. at 228. Thus, counsel cannot be deemed ineffective for failing to raise a motion that had little or no chance of success, and a defendant can not show prejudice when counsel chooses not to pursue a nonmeritorious claim on which it is unlikely he would have prevailed. Strickland, 466 U.S. at 690, Knowles v. Mirzayance, 556 U.S. 111, 127 (2009); Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001). Consequently, the Court denies ground two in its entirety as without merit, finding that Petitioner has failed to demonstrate that the State court's adjudication of the claim was contrary to clearly established federal law, involved an unreasonable application of clearly established federal law, and

was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d).

**Ground Three**

In his third ground alleging ineffective assistance of trial counsel, Petitioner avers that counsel erred in failing to bring to the trial court's attention that the victim was not wearing her nun's habit at the time of the alleged crime.  Petition at 10.[4] Respondent submits that this ground is unexhausted and procedurally barred.  Response 24.

The Court finds that Petitioner failed to raise this issue in his *pro se* Rule 3.850 motion.  <u>See</u> Exh. 9.  Consequently, this ground is unexhausted.  Additionally, under Florida's two-year time limitation for bringing a Rule 3.850 motion and Florida's successive petition rule, this ground is now procedurally barred from review.  <u>Whiddon v. Dugger</u>, 894 F.2d 1266 (11th Cir. 1990); <u>Bolender v. Singletary</u>, 60 F.3d 727, 729 (11th Cir. 1995). Petitioner does not show cause and prejudice, or a fundamental miscarriage of justice to excuse his default.  Consequently, the Court dismisses Ground Three as unexhausted and procedurally barred, and will not address the merits of this Ground for relief.

---

[4]Trial counsel did file a motion *in limine* to bar the victim from wearing her religious habit at trial.  TT, Vol. III at 5. Counsel argued that permitting the victim to wear the habit violated Petitioner's due process rights and denied him a fair trial.  In argument, in addition to arguing the prejudice, counsel pointed out that the victim did not wear her habit during her deposition. <u>Id.</u> at 9.

**Ground Four**

Petitioner assigns error to the trial court for admitting into evidence a letter, photograph and testimony related to the same. Petition at 12.   In particular, Petitioner claims that the testimony from Zelda Williams concerning a letter sent to Ms. Williams along with a photograph of money was improperly introduced to imply that Petitioner was bribing Ms. Williams to offer perjured testimony that he was not in the area at the time of the robbery. Id. at 12-13.  Petitioner points out that counsel filed a motion *in limine* to exclude these items.   The trial court denied the defense's motion *in limine* and permitted Ms. Williams' testimony, the letter to Ms. Williams, along with the photograph of the money which was attached to the letter into evidence.   Id.  Petitioner raised the trial court's denial of his motion *in limine* as error on direct appeal.  Exh. 2 at 25.  As such, Petitioner argues that he was denied a fair trial.

Respondent argues that Petitioner did not raise this issue to the State courts in terms of a federal constitutional violation. Response at 25.  Instead, Petitioner argued that these items where speculative and were not relevant under Florida law.   Id.

Upon review of the record and binding precedent, the Court finds that Ground Four is unexhausted and procedurally barred.  In particular, in Petitioner's direct appeal brief, Petitioner argued that the objected-to-evidence was not relevant, but was speculative

evidence only.  Id. at 27-28.  Further, Petitioner cited only to Florida case law and statutes in support of this position that the evidence was improperly admitted.  Id. at 25-31.  Petitioner did not argue that he was denied "due process" or denied a "fair trial" under federal law.  Nowhere in his direct appeal brief does Petitioner cite to the U.S. Constitution or to any Constitutional Amendments.  See generally Id.  Petitioner never asserted a Fourteenth Amendment Due Process claim to the State court below as he does now before this Court.  Consequently, the Court finds that the federal dimension of Ground Four is unexhausted and procedurally barred.

In the alternative, even if the Court deems Ground Four exhausted, the Court finds the Ground without merit.  Here the following colloquy took place during argument on the motion *in limine*:

> THE COURT:     You have a second motion?
>
> MR. GARBER:     The State is intending to call a witness, Zelda Williams, who is going to testify that Mr. Major sent her a letter regarding her testimony in this case, and enclosed with the letter was a picture of a stack of money - - which is actually part of the discovery of another pending case - - and on the back of that picture there was a note indicating that this money was found in the car and if I win my case I'll get this back.
>
> It's my contention, Judge, that this evidence is not relevant.
>
> THE COURT:     The picture or the letter?
>
> MR. GARBER:     Actually, I don't think either of them are relevant to the issues in this case, but the picture and

little note specifically.  It may clarify it if I show you the items they're talking about.

MR. GALASSO:   The original is right there, we pretty much agreed to that.  If she would like to open it up and let you have it.

MR. GARBER:   I have a copy of it right here.

THE COURT:   Well, let me see the copy.  Do you know -- it says, as I read this, "This is money they found under car seat.  If I win my case, I will get it back."

MR. GARBER:   Yes, sir.

THE COURT:   Okay. What else do you want to tell me?

MR. GARBER:   It's my argument this evidence is not relevant to the issues of this case even if it's marginally relevant, it's outweighed by the prejudicial nature of it.  It really doesn't shed any light on the issues of the case.  The letter itself is basically an attempt to get her to show up for court, and doesn't really have any probative value.

      Also, we've taken the deposition of Zelda Williams, actually we did that I think it was Monday afternoon.

MR. GALASSO:   She's also in the courtroom,

MR. GARBER:   And she indicated she has not been influenced by this in any way.  She had prior contact with me and talked about the facts of the case and told me the truth, and her intention throughout this case has been to tell the truth from the beginning, and it remains that.

MR. GALASSO:   I would just like - - I would just point out, judge, the letter says two things which I consider key.  It says "I need you to come tell them what you told them before about me and Londa was not down here." Londa is Shalonda, who is Ms. Williams' daughter.  "Me and Londa was not down here for New Wave's birthday."  New Wave is - - well, actually would have been a co-defendant in the defendant's other case, but he was actually killed.  Then it stops and it says "I need for you to come and tell them that."  And then it just has all little small talk, much love and all that kind of friendship sort of stuff.

-28-

Essentially what Ms. Williams said was, I would imagine
from the beginning - - she was their witness first.
Essentially what she said was she can't say he wasn't
down here, she can only say that he stayed in Boynton
Beach.  What he is asking for in this letter with the "I
need for you to come and tell them that, that I was not
down here." When you couple that with what's written on
the back of the picture of a stack of money, there's
really only one conclusion one can come to, that he's
showing - - and the only conclusion she came to - - he's
showing her the money to, in a sense, suggest that if she
says that she will then share in the riches when he gets
them back, when he wins the case.

       Any offer to coerce a witness or bribe a witness is
evidence of consciousness of guilt.  There is, I'm sure
you are aware, case law on that it can be outweighed by
the prejudicial affect, but in this particular case - -
usually when Courts evaluate that, they would say what
would be the innocent reason for this letter.  I can't
picture any innocent reason for the picture of the money.

       And the other argument I would make is that the
letter, where he's asking in the letter to do certain
stuff, is dictated, but it's dictated with information
that only she would know.

THE COURT:      What do you mean dictated?

MR. GALASSO:    Whereas he would be telling somebody who
would then be writing it.

THE COURT:      I was thinking you had someone else
transcribe it.

MR. GALASSO:    No.

THE COURT:      Okay.

MR. GALASSO:    He handwrote what was on the back of the
picture of money.  The only inference you can draw from
that, is that he's suggesting financial gain for a woman
if she is to say that he is not here, which she never
could say.

MR. GARBER:     She's never indicated that he wasn't here,
she just indicated that he wasn't at the birthday party
that she had for her husband in Fort Myers, Judge.  The
note that he wrote put on the back of that picture of

money doesn't in any way indicate that she's going to get anything, it doesn't offer her anything.

MR. GALASSO: The thing is - -

MR. GARBER:   It could be that he was trying to impress the mother of his girlfriend, his former girlfriend.

THE COURT:   Well, that may be, but this is of his own doing and he's going to have to live with it.  I won't suppress it.

Exh. 1, Vol. III at 9-14.

This Court does not sit as a court of appeal and "engage in a finely tuned review of the wisdom of state evidentiary ruling[s]." Estelle v. McGuire, 502 U.S. 62, 72 (1991)(citations and internal quotations omitted).  The claims regarding the admissibility of the Ms. Williams' testimony, the letter and picture of money concern matters of state evidentiary law, not federal constitutional error. Therefore, the claims are not cognizable in this federal proceeding.  This Court may not inquire into the validity of the trial court's application of its own evidentiary rules.  Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir.1983); see also Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988).  Instead, the alleged errors must be of such magnitude to have rendered a defendant's trial "fundamentally unfair."  Estelle, 502 U.S. 62. As more fully set forth below, Petitioner has not made this showing based upon the record.  Consequently, the Court denies Petitioner relief on Ground Four.

**Ground Five**

Petitioner argues that there was insufficient evidence to convict him of the charge of home invasion with a weapon. Petition at 15. Specifically, Petitioner points out that the only evidence linking Petitioner to the crime was the victim's testimony identifying Petitioner as the assailant. Id. Petitioner contends that the victim's testimony was "could not be considered credible." Id. Additionally, Petitioner submits that because it was the only evidence against him, "the evidence was insufficient." Id. Thus, the trial court "fundamentally erred in denying Petitioner's Motion for Judgment of Acquittal." Id.

"The purpose of a motion for judgment of acquittal is to test the legal sufficiency of the evidence presented by the [S]tate." Harris v. State, 954 So.2d 1260, 1261 (Fla. 5th DCA 2007). There is "sufficient evidence to sustain a conviction if, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt." Baugh v. State, 961 So.2d 198, 204 (Fla. 2007).

Here, defense counsel moved for a judgment of acquittal at the end of the State's case. Exh. 1, Vol. IV at 311. Counsel stressed that the only evidence that linked Petitioner to the crime was the testimony of the victim, Sister Andrew. Id. Further counsel characterized the victim's testimony as "unreliable" and went into

great detail about potential discrepancies in the victim's testimony. Id. Both the trial court and the appellate court on direct appeal found sufficient evidence had been presented by the prosecution to overcome the motion for judgment of acquittal. Id. at 317; Exh. 4.

Here, Petitioner is asking the Court to sit as the trier of fact. Such is not a habeas court's role. Rather, the Supreme Court noted it is the duty of the jury "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts," and a reviewing court may not substitute its judgment as to whether it believes the evidence to be sufficient to sustain a conviction. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). Petitioner has not demonstrated that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.

The Court finds that the State court's rejection of this claim warrants deference. Further, the State court's adjudication of this claim was not contrary to clearly established federal law, and was not an unreasonable determination of the facts in light of the evidence. Thus, Ground Five is denied as without merit.

ACCORDINGLY, it is hereby

**ORDERED:**

1. Petitioner's request for an evidentiary hearing, contained within his Petition and Reply, is **DENIED.**

2.    The Florida Attorney General is **DISMISSED** as a named Respondent.

3.    The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED** for the reasons set forth above.

4.    The **Clerk of Court** shall terminate any pending motions, enter judgment accordingly, and close this case.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  Id.  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2).  To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003)  Petitioner has not made the requisite showing in these circumstances.  Finally, because Petitioner is not entitled to a

certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Fort Myers, Florida, on this ___21st___ day of March, 2012.

JOHN E. STEELE
United States District Judge

SA: hmk

Copies: All Parties of Record